[Cite as *State v. Bitting*, 2017-Ohio-2955.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28317 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| DANIEL L. BITTING | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2016 04 1206 |

DECISION AND JOURNAL ENTRY

Dated: May 24, 2017

TEODOSIO, Judge.

{¶1} Appellant, Daniel L. Bitting, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Bitting entered the Barberton Mini Mart and purchased a Black & Mild cigar. Seconds later, Mr. Bitting's juvenile cousin, T.J., entered the store, pointed a gun at the clerk, demanded all of the money, and threatened to shoot her. Mr. Bitting did not leave the store during the robbery, but stood near T.J. and paced back and forth with his hands up. Mr. Bitting went to the front door at one point and looked outside, but he did not leave. After the robbery, Mr. Bitting and T.J. left the store within seconds of one another and ran off in the same direction.

{¶3} Mr. Bitting was arrested and charged with complicity to commit aggravated robbery. The indictment was later supplemented with a complicity to commit robbery charge and two repeat violent offender specifications. The repeat violent offender specifications were

bifurcated and the case proceeded to trial on the two complicity charges. After a jury trial, Mr. Bitting was convicted of both complicity to commit aggravated robbery and complicity to commit robbery. The trial judge then found Mr. Bitting to be a repeat violent offender. The two complicity counts were found to be allied offenses of similar import and were merged for sentencing. Mr. Bitting was sentenced to a mandatory term of six years in prison. No sentence was imposed for the repeat violent offender specification.

{¶4} Mr. Bitting now appeals from his convictions and raises three assignments of error for this Court's review.

II.

### ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶5} In his first assignment of error, Mr. Bitting argues that there was insufficient evidence to show that (1) he assisted in the robbery in any way, and (2) the BB gun was a deadly weapon capable of inflicting death. We disagree with both propositions.

{¶6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. But, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶7} Mr. Bitting was convicted of complicity to commit aggravated robbery and complicity to commit robbery. The aggravated robbery statute states, in part:

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *.

R.C. 2911.01(A)(1). The robbery statute states, in part, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another * * *." R.C. 2911.02(A)(2).

{¶8} The complicity statute states, in part, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *." R.C. 2923.03(A)(2). Complicity by aiding and abetting means "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime" and "the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "[C]riminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally

guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, ¶ 21; *see also* R.C. 2923.03(F).

{¶9}    The fact that T.J. robbed the Barberton Mini Mart with a BB gun was not in dispute at Mr. Bitting's trial.  Instead, the extent of Mr. Bitting's involvement in the crime, if any, was at issue.  "[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269 (1982).  The State proceeded at trial on a theory that Mr. Bitting was complicit in the robbery by providing the BB gun to T.J., planning the robbery with T.J., acting as a lookout during the crime, fleeing with T.J. immediately after the crime, and dividing up the stolen money after the crime.

{¶10}  The State presented evidence, if believed, that showed Mr. Bitting as more than just an innocent bystander in the robbery.  The clerk testified that she was working at the Barberton Mini Mart on the night of the robbery.  Mr. Bitting entered the store and purchased a Black & Mild cigar.  T.J. entered the store a few seconds later, pointed a gun at the clerk's face from a distance of about an arm's length away, demanded all the money from the cash register, and threatened to shoot her.  She was scared, believed the gun was real, and thought T.J. was going to shoot her.  T.J. told the clerk that he "wasn't playing around."  Mr. Bitting put his hands up and said, "Come on, dude.  What are you doing?  Are you serious?"  T.J. never said anything to Mr. Bitting during the robbery and never pointed the gun at him.  The clerk testified that Mr. Bitting stood there watching the robbery and paying attention to how much money the clerk put in the bag.  Mr. Bitting paced back and forth and kept looking back at the door, but he did not leave the store.  He went to the front door, pushed it open, and looked outside, but then came back inside the store.  The men left the store together.

{¶11} The surveillance videos confirm the clerk's account of the robbery. T.J. enters the store approximately fifteen seconds after Mr. Bitting. Although Mr. Bitting has his hands up during the robbery, he stands right next to T.J. and watches the clerk put money in the bag. T.J. appears to completely ignore Mr. Bitting's presence throughout the entire robbery. Mr. Bitting repeatedly glances at the front door. At one point, Mr. Bitting makes a quick movement heading toward the door when almost all of the money is in the bag, but he stops and turns around to watch the clerk struggle in gathering the rest of the change out of the register and putting it in the bag. Soon thereafter, Mr. Bitting goes to the front door, cracks it open, and looks outside, but he does not leave. Instead, he comes back into the store while the robbery is still in progress and while the clerk is retrieving more money from below the counter. He returns to the front door a second time, props it open and stands there, continuing to watch the robbery as T.J. orders the clerk down on the ground. Mr. Bitting waits with the door propped open for approximately eight seconds before finally leaving. As Mr. Bitting leaves, T.J. immediately runs out the door behind him and both men run away from the store together in the same direction.

{¶12} T.J. testified that Mr. Bitting is his older cousin. When T.J. told Mr. Bitting that he wanted to rob the Barberton Mini Mart, Mr. Bitting said that he did not want T.J. to do it or that Mr. Bitting wanted to do it himself. Mr. Bitting gave T.J. the BB gun used in the robbery a week or two before T.J. broached the idea of robbing the store. The two men also discussed different plans for the robbery beforehand, including what their respective roles would be in the crime. Their robbery plans changed multiple times. Although T.J. testified on cross-examination that he committed the robbery alone, he also testified on direct examination that he decided to just go ahead and do it after discussing it with Mr. Bitting. When T.J. saw Mr. Bitting enter the store, he entered the store as well and robbed it. He was not worried about Mr. Bitting

stopping him during the robbery. T.J. testified that the two men, "[Ran] out *together*" and once they were outside of the store, "*We* ran. I ran, yeah." (Emphasis added.). T.J. gave Mr. Bitting some of the money from the robbery afterwards and told him he was going to Akron. Mr. Bitting was later arrested by Detective Robert Russell at T.J.'s residence.

{¶13} Mr. Bitting also argues that the evidence was insufficient to show that the BB gun was a deadly weapon capable of inflicting death. A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). A BB gun is not a firearm, but can be a deadly weapon if the BB's are expelled at a sufficient rate of speed. *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶ 49. Even if the BB's are not powerful enough to cause death, a BB gun can be a deadly weapon if used as a bludgeon. *Id.* at ¶ 50. An inscription on the label of a gun warning that it could cause serious injury or death is also sufficient evidence that a gun is a deadly weapon. *See State v. Houston*, 8th Dist. Cuyahoga No. 100655, 2014-Ohio-3911, ¶ 21. However, a BB gun cannot be presumed to be capable of inflicting death if no evidence is presented to show that it can be lethal in its use. *Johnson* at ¶ 50.

{¶14} "A jury is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use." *State v. Vondenberg*, 61 Ohio St.2d 285, 289 (1980). Here, although there was no evidence that T.J. used or threatened to use the gun as a bludgeon, the State entered the BB gun itself into evidence. The gun bears a warning label that reads, "WARNING: NOT A TOY. MISUSE OR CARELESS USE MAY CAUSE SERIOUS INJURY OR DEATH. FOR USE BY AGES 16 AND OLDER. BEFORE USING READ OWNERS MANUAL." (Emphasis sic.). The surveillance videos show T.J. at an arm's length away from the clerk with

the BB gun pointed at her face. The clerk testified that T.J. threatened to shoot her. Detective Robert Russell later recovered the gun and found it to be intact and loaded with BB's, with the grip and $CO_2$ cartridge attached. It is conceivable that a BB gun, when fired into someone's face from the close distance of an arm's length away, is capable of inflicting death. *See State v. Valentin*, 11th Dist. Portage No. 2009-P-0010, 2009-Ohio-6038, ¶ 40.

**{¶15}** After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence for the case to go to the jury. Furthermore, any rational trier of fact could have found all of the essential elements of complicity to commit aggravated robbery and complicity to commit robbery proven beyond a reasonable doubt.

**{¶16}** Mr. Bitting's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶17}** In his second assignment of error, Mr. Bitting argues that none of the witnesses testified as to any actions demonstrating his complicity in the robbery and there is no evidence of his aiding and abetting T.J. in any way in the robbery. We disagree.

**{¶18}** This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a

'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. "This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction." *State v. Hamilton*, 9th Dist. Lorain No. 15CA010830, 2017-Ohio-230, ¶ 20.

{¶19} However, Mr. Bitting's manifest weight argument is essentially a sufficiency of the evidence argument. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. "An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency, not weight." *Id.* "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20.

{¶20} Mr. Bitting has not challenged any of the evidence the State set forth as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. This Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. We have already determined above that his convictions are based on sufficient evidence. Mr. Bitting has not shown that this is an exceptional case where the trier of fact lost its way in convicting him. *See id.* at ¶ 33.

{¶21} Mr. Bitting's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE COURT COMMITTED PLAIN, PREJUDICIAL ERROR BY ALLOWING THE PROSECUTOR TO REFER REPEATEDLY TO THE BB GUN IN THIS CASE AS A "FIREARM"

{¶22} In his third assignment of error, Mr. Bitting argues that the prosecutor repeatedly referred to the BB gun as a firearm, resulting in prejudicial, plain error by confusing the jury into conflating a BB gun with a firearm, which is a deadly weapon per se. He claims that no curing instruction was given by the trial court. We disagree.

{¶23} Although Mr. Bitting's trial counsel addressed the fact that a BB gun is not a firearm during his closing arguments, he never actually objected to the prosecutor's comments when they were made at various points throughout the trial. "When no objection to the comments is made at trial, our review is limited to plain error." *State v. Brown*, 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 49.

{¶24} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "[The] error must be obvious and have a substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Elkins*, 9th Dist. Summit No. 19684, 2000 WL 1420285, *8 (Sept. 27, 2000). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶25} The parties agree that the prosecutor erred by referring to the BB gun as a firearm several times during the trial. Defense counsel never objected to the misstatements, but stated the following during closing arguments:

> It is certainly not a firearm. [The prosecutor] said that word. And I will share with you that you've received no evidence that it was. There's specific laws and words and crimes that are involving firearms, and this is not a firearm. I don't

know whether you want to call it a gun or not. I call it a toy gun. I call it a BB gun.

**{¶26}** The prosecutor also corrected the misstatements and stated, "It's not a firearm. We don't have to prove it's a firearm. We've got to prove it's a deadly weapon capable of causing death." The trial court did not mention the word "firearm" when instructing the jury, but consistently used the proper term of "deadly weapon."

**{¶27}** Mr. Bitting has not shown this Court how the prosecutor's erroneous remarks clearly changed the outcome of the trial. *See Elkins* at \*8. The trial court's jury instructions, which are completely devoid of any use of the term "firearm," coupled with the prosecutor's and defense counsel's corrective comments during closing arguments were sufficient to preclude a conclusion by this Court that a manifest miscarriage of justice occurred. *See State v. Dennison*, 9th Dist. Medina No. 2660-M, 1998 WL 114392, \*3 (Mar. 4, 1998).

**{¶28}** Mr. Bitting's third assignment of error is overruled.

III.

**{¶29}** Mr. Bitting's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.