The STATE of Ohio, Appellee,

v.

REARDON, Appellant.

[Cite as *State v. Reardon,* 168 Ohio App.3d 386, 2006-Ohio-3984.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1275.

Decided Aug. 4, 2006.

Julia R. Bates, Lucas County Prosecuting Attorney, and David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Harland M. Britz, for appellant.

PARISH, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas convicting appellant on one count of aggravated burglary and one count of aggravated robbery, each with gun specifications. For the following reasons, this court affirms the judgment of the trial court.

{¶ 2} On appeal, appellant sets forth the following assignment of error:

{¶ 3} "The Court of Common Pleas of Lucas County, Ohio erred in admitting the testimony of Mark Silva and Officer Haynes recounting out of court statements made by Lauren Bair identifying the Appellant as one of the perpetrators of the crime herein. Said ruling violated Appellant's right to confront witnesses guaranteed by the Sixth Amendment to the United States Constitution."

{¶ 4} The facts relevant to the issues raised on appeal are as follows. On January 18, 2005, four men invaded the home of Colleen Martinez and Mark Silva. One of the men carried a sawed-off shotgun. A friend of the family, Lauren Bair, who was staying with them, had just received a $19,000 insurance settlement, and the men were after the cash.

{¶ 5} Martinez was washing some dishes in preparation for supper when she noticed the four men approaching her back door. They attempted to open the door. They beat and kicked the door repeatedly while Martinez braced herself against it. While the men continued to try to gain access to the house, Silva grabbed a phone and dialed 9–1–1. As the men entered the home, Silva escaped through a window and continued to call for help.

{¶ 6} The men searched the house looking for the insurance settlement money. They threatened and physically assaulted some members of the house. As police sirens were heard in the neighborhood, the invaders retreated from the house. The first officers on the scene saw their retreat. The invaders never found the money.

{¶ 7} During the invasion, the bandanas covering the invaders' faces partially slipped off. The victims recognized two of the invaders. One was appellant. The neighborhood knows appellant as a drug dealer, and he is recognizable by his lazy eye.

{¶ 8} The police were on the scene within minutes of Silva's 9–1–1 call. Officer Michael Murphy and his partner Officer Michael Haynes were the first on the scene. Officer Haynes entered the victims' home to take statements and gather as much information as possible from them. Officer Murphy pursued the fleeing suspects to appellant's home approximately six houses away.

{¶ 9} The scene in the victims' kitchen was emotional and chaotic. Officer Haynes struggled to get coherent information from the victims while they were in this state of agitation. Although the exact timing of the statement is unclear from the record, at some point Bair blurted out, "It's that fucker Albert Quinn, and * * * it's that fat fucker Reardon with the lazy eye down at the end of the street." At the time she spoke, Officer Haynes noted Bair was still "hysterical" and the general atmosphere was still very chaotic. This entire episode occurred within three to five minutes after the police arrived.

{¶ 10} When police officers tracked the invaders down, they found them, along with the shotgun, in appellant's home. As police entered, they found appellant lying on the couch. Although four men were initially arrested, appellant was not one of them because he was not "actively hiding" in the house. Appellant's brother, who had multiple warrants out for his arrest, was among the men hiding in the house. Due to his suspicious behavior, police took appellant's brother into custody. When the victims participated in an on-site identification, Martinez correctly identified three of the men based on their clothing and builds, but mistook appellant's brother for appellant. She did note to the officer that the brother's eyes did not look right, and she was unsure that he was one of the invaders. Later, in a police photo array, she correctly identified appellant as one of the invaders. After this identification, police arrested appellant.

{¶ 11} This appeal turns on the statement made by Lauren Bair identifying appellant based on his lazy eye. She was the family friend who had received the insurance settlement. Silva and Officer Haynes overheard this statement. At trial, Bair was unavailable. The circumstances surrounding the statement gave it enough credibility that the court allowed it into evidence as an excited utterance.

{¶ 12} Appellant now argues that the trial court erred when it overruled objections to testimony regarding the statement at trial. Appellant asserts that the testimony was inappropriately admitted based on the United States Supreme Court's decision in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. The *Crawford* court held that out-of-court testimonial statements could not be admitted unless the defendant had the opportunity to cross-examine the witness and the witness was unavailable. Id. at 53, 124 S.Ct. 1354, 158 L.Ed.2d 177. Such statements violate a defendant's Sixth Amendment right to confrontation. Id. Testimonial statements have to adhere to a higher standard. Thus, the question becomes, was Bair's statement testimonial?

{¶ 13} Nontestimonial statements were more clearly defined by the United States Supreme Court's decision in *Davis v. Washington* (2006), —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224. There the question was whether a 9–1–1 call identifying the perpetrator qualified as a "testimonial" police "interrogation" subject to *Crawford*. The court held that it did not. First, the court clearly delineated that there is a difference between testimonial statements and nontestimonial statements for the purpose of the Confrontation Clause of the Sixth Amendment. Id., —— U.S. ——, 126 S.Ct. at 2273, 165 L.Ed.2d 224. Only statements that are testimonial in nature trigger the Confrontation Clause provisions. Id. Although some police interrogations clearly produce testimonial statements, not every statement made to a police officer is inherently testimonial. Id.

{¶ 14} The rule established by Davis is that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that *the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.*" (Emphasis added.) Id. When the purpose of the questioning is to "prove past events," the statement is testimonial. Id., —— U.S. ——, 126 S.Ct. at 2274, 165 L.Ed.2d 224.

{¶ 15} The court also established three factors to consider in determining whether a statement fits this definition. The statement is nontestimonial where it is made to identify current conditions. Id., —— U.S. ——, 126 S.Ct. at 2276, 165 L.Ed.2d 224. The key here is that the emergency must be ongoing. If the danger is ongoing, the statement is more likely to be nontestimonial. Id. Second, the officer must tailor questions to resolving the emergency rather than gathering the facts about the emergency as it passed. Id. Questions designed to promote safety in an ongoing emergency are nontestimonial as a matter of public policy because officers need to know the character of the individuals they are pursuing. Id. Finally, the formality of the questioning is an indicator. The emotional state of the declarant, the tranquility of the environment, and the relative safety of the parties involved all shed light on the testimonial nature of the statement. Id., —— U.S. ——, 126 S.Ct. at 2277, 165 L.Ed.2d 224. The more chaos in the situation, the less likely that the statement is testimonial. Id. When a statement meets this test, it is nontestimonial hearsay, and its admission into evidence is proper if there is an applicable exception to the normal hearsay rule. Id., —— U.S. ——, 126 S.Ct. at 2277, 165 L.Ed.2d 224.

{¶ 16} When subjected to the Davis test, Bair's statement is clearly nontestimonial. The questions by Officer Haynes concerned an ongoing emergency. As Officer Haynes and his partner arrived on the scene, they saw suspects fleeing. Silva's 9–1–1 call specified that the home had been invaded, but he could not pinpoint exactly how many suspects there were, or how heavily armed they were. The officers needed to ensure their own safety and the safety of the rest of the neighborhood by eliciting information from the victims. Nothing in the record indicate that Officer Haynes directed his questions to any goal other than this. Thus, Bair's statement meets the first prong of the test.

{¶ 17} The record is unclear as to exactly what questions were asked and when Bair blurted out her statement. What is clear from the record is that Officer Haynes was actively relaying any information he could glean from the victims over his portable radio. He would relay the information to other officers responding to the call, *as the victims answered.* The United States Supreme Court points out in *Davis* that "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence." Id.,

—— U.S. ——, 126 S.Ct. at 2277, 165 L.Ed.2d 224. The record demonstrates that this is one of those situations, and Officer Haynes's actions should not be second-guessed. Thus, Bair's statement meets the second prong of the test.

{¶ 18} Finally, the police questioning does not meet the required level of formality to produce a testimonial statement. Officer Haynes initially interviewed the victims in the kitchen where the invasion started. He described the scene as emotionally charged and "chaotic." At the point when Bair blurted out her statement, Officer Haynes described her as "hysterical." He further noted that she never really seemed to calm down. The agitation of the declarant, the lack of tranquility in the kitchen, and the insecurity of knowing that there were armed, violent men loose in the neighborhood all point to the conclusion that Bair's statement meets this prong of the test.

{¶ 19} Bair's statement was nontestimonial and did not trigger the Confrontation Clause. Its primary purpose was to assist police in resolving an ongoing emergency. The normal rules of hearsay evidence govern it. The trial court correctly applied Evid.R. 803(2) in allowing the statement into evidence as an excited utterance. Thus, appellant's sole assignment of error is not well taken.

{¶ 20} This court finds that appellant was not prejudiced, and the judgment of the Lucas County Court of Common Pleas is affirmed.

Judgment affirmed.

HANDWORK and PIETRYKOWSKI, JJ., concur.