[Cite as *State v. Grayson*, 2021-Ohio-4312.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110388 |
| v. | : | |
| JANET GRAYSON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 9, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-645962-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Harrison, Assistant Prosecuting Attorney, *for appellee.*

Judith M. Kowalski, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Janet Grayson ("Grayson") appeals from her conviction for felonious assault. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} This case arose from an incident that took place on July 29, 2019. As a result of this incident, on December 3, 2019, a Cuyahoga County Grand Jury indicted Grayson on one count of felonious assault in violation of R.C. 2903.11(A)(1) and one count of felonious assault in violation of R.C. 2903.11(A)(2). Grayson pleaded not guilty to both counts and waived her right to a jury trial, and the case proceeded to a bench trial on December 29, 2020. At trial, the state called three witnesses and the defense called two witnesses.

{¶ 3} The victim in this case, Kelly Ellison ("Ellison"), suffered an injury to her arm requiring 22 staples and an injury to her face requiring 13 stitches. Ellison testified that at around 7 p.m. on July 29, 2019, she was driving home from visiting her mother in the hospital. Ellison lives on West 93rd Street in Cleveland, Ohio. As she was driving down her street, Ellison came upon a man and a woman standing in the middle of the street. Initially, Ellison did not recognize either of the individuals. Ellison honked her horn so that they would move out of the road and she could proceed. Ellison testified that as soon as she honked her horn, the woman started yelling profanities at Ellison, threatening Ellison, and ultimately striking Ellison's car with her hand.

{¶ 4} After the woman hit Ellison's car, Ellison stopped the car and got out of her car. At that point, Ellison realized that the man standing in the road was her mother's ex-husband, Michael Schneider ("Schneider"). Ellison testified that she

weighed approximately 300 pounds. At trial, Ellison identified Grayson as the woman who was standing in the middle of the road with Schneider.

{¶ 5} Ellison testified that she addressed Schneider in an attempt to defuse the situation and told them to get out of the road. According to Ellison, Schneider and Grayson both became irate and told Ellison that she had nothing to do with their disagreement. Ellison's aunt, Sharon Tawney ("Tawney"), also lived on West 93rd Street, and when Ellison came upon Schneider and Grayson, Tawney had been outside in her front yard. Ellison testified that while she and Schneider became involved in a verbal altercation, Grayson bent down and broke the beer bottle she was holding on the pavement. As Grayson stood up, she swung at Ellison and cut the back of Ellison's arm. Ellison ultimately needed 22 staples in her arm as a result of this injury.

{¶ 6} Ellison testified that Schneider then attempted to hold Grayson back from Ellison, and Ellison started to get back in her car. When Grayson continued to insult and threaten Ellison, Ellison went back to where Grayson was. At that time, Grayson sliced Ellison's face with the broken beer bottle, resulting in a laceration from Ellison's brow to the underside of her jaw. Ellison ultimately needed 13 stitches on her face as a result of this injury. In response to getting cut in the face with a beer bottle, Ellison hit Grayson in the face. Ellison testified that at no point before this had she touched or hit Grayson. Ellison testified that she did not observe any injuries on Grayson. Both of Ellison's injuries left permanent scars.

**{¶ 7}** According to Ellison, Schneider was instigating the fight between Grayson and Ellison, at one point saying "let them fight." The women continued to physically fight after Ellison hit Grayson. Ellison testified that the altercation eventually ended when her cousin reached the group and pulled Grayson and Ellison apart. Ellison called 911 and was taken to Fairview Hospital to be treated for her injuries. Ellison testified that Schneider and Grayson were both intoxicated. Ellison explained that because she had known Schneider for years and had seen him drunk many times before, she could tell that he was intoxicated during this incident. Ellison testified that she had never met Grayson before this incident and therefore could not say whether the behavior she exhibited was normal or was because she was intoxicated, but she assumed that Grayson was intoxicated because she smelled of alcohol and Grayson was holding the beer bottle for the duration of their interaction.

**{¶ 8}** Ellison also testified that Grayson attempted to reach out to her in October 2019 and sent her messages on Facebook. Ellison read the messages aloud at trial; Grayson apologized but also stated that she defended herself.

**{¶ 9}** Tawney, Ellison's aunt, also testified at trial. She testified that she lived on West 93rd Street and that her brother, her niece Ellison, another niece, and additional family also lived on the street. Tawney testified that on the date of the incident, her landlord, who also lived on West 93rd Street, came to her house with Schneider and Grayson to fix something. Tawney identified Grayson at trial. Tawney explained that she knew Schneider because he was her ex-brother-in-law,

but she had not seen or met Grayson before that day. Tawney testified that she was not sure why Schneider and Grayson were with her landlord when he came to her house, but they all had beers in their hands and were drinking. Tawney explained that it was common for her landlord to drink when he came over to her house. Tawney testified that she had seen Schneider drunk in the past and it was clear that he was drunk that day because he was staggering and slurring his words.

{¶ 10} Tawney also testified that Grayson started talking to Tawney's fiancé, making derogatory remarks about his military service. Tawney's fiancé asked the landlord to get Schneider and Grayson off of the property, and the landlord instructed them to go to the landlord's house several doors down. At that point, Schneider and Grayson went out into the road, where Grayson started screaming and yelling, threatening Tawney because Tawney and her fiancé asked her to leave. Tawney then told Schneider to leave. According to Tawney, at no point was her or her fiancé's interaction with Grayson physical.

{¶ 11} Tawney testified that it was at this point that Ellison drove down the street. Tawney's testimony of the interaction between Ellison and Grayson largely corroborates Ellison's testimony. Tawney instructed her children, who had been playing in the front yard, to go inside. Tawney testified that she had an unobstructed view of Ellison, Ellison's car, Grayson, and Schneider. Tawney saw Grayson smack the side of Ellison's car and begin screaming threats and profanities at Ellison. Tawney testified that when Ellison got out of the car, she did not shove or otherwise touch Grayson; she only asked Grayson why she was in the street. According to

Tawney, Grayson told Ellison, "[T]his has nothing to do with you, get back in the car," to which Ellison replied, "[Y]ou hit my car, you made it something to do with me." Tawney testified that at that point, Grayson smashed her beer bottle on the ground and "went after" Ellison, running towards her and cutting Ellison's arm. According to Tawney, the group then began to walk down the street towards Ellison's sister's house, at which point Ellison began fighting with Grayson. At that point, Grayson "tried to swing" and slashed Ellison's face with the beer bottle. Tawney reiterated that Schneider made no attempt to break up the women and was instead instigating the fight, and she testified that Grayson and Schneider were drinking throughout the altercation. Tawney and Ellison both testified that they did not see Grayson sustain any injuries; Tawney testified that Grayson's shirt was ripped but that Grayson had done that.

{¶ 12} Cleveland police officer Tara French ("Officer French") testified that she responded to a call for a felonious assault. Officer French testified that she met Ellison and observed that she had lacerations on her face and one of her arms and that the lacerations were bleeding. Ellison told Officer French that a woman had struck Ellison with a broken glass bottle, and Officer French testified that the injuries she observed on Ellison were consistent with Ellison's story. Officer French also spoke with Tawney and subsequently prepared a written report. Officer French stated that she was unable to speak with Grayson because Grayson had left the scene. Officer French did not speak to anyone else on the scene who gave her a different story than what she was told by Ellison and Tawney.

{¶ 13} Following Officer French's testimony, the state moved to admit photographs of Ellison's injuries, Ellison's medical records, the photo lineup of Grayson, and the Facebook messages from Grayson into evidence, before resting its case. Defense counsel then made a Crim.R. 29 motion for acquittal, which the court denied. Grayson and Schneider testified as witnesses for the defense.

{¶ 14} Grayson testified that at the time of the incident in this case, she was dating Schneider. Grayson lived in Mansfield, Ohio, and on the date of the incident, she and Schneider went to West 93rd Street to see some of his friends who lived there, including Tawney's landlord. Grayson testified that she and Schneider were drinking and that she had about three beers that afternoon. According to Grayson, she was standing in a driveway talking to one of Schneider's friends — Tawney's fiancé — about cars when a woman came out of the house and told Grayson to get off of her property immediately. Grayson testified that she walked out into the street and was talking to Tawney, who at that point was in the yard. At that point, according to Grayson, a car came down the street, tried to hit her, and parked about 40 feet from where Grayson and Schneider were standing in the street. A woman — Ellison — jumped out of the car, leaving the door open and the engine running. According to Grayson, a tall man approached them and hit Schneider. At this point, Grayson testified that she and Tawney were yelling at each other. Grayson testified that she and Schneider both had beer bottles in their hands and that Schneider was more intoxicated than she was at the time. According to Grayson, Schneider had been drinking for about 48 hours straight and had not gone to sleep the night before.

{¶ 15} Grayson testified that she weighed approximately 150 pounds. According to Grayson, the tall man who had hit Schneider then proceeded to charge her, shoving her so hard that she allegedly flew 15 feet through the air and landed in a lawn across the street. As a result of this, Grayson injured her back on the ground. According to Grayson, this also resulted in her beer bottle breaking. Grayson testified that Schneider helped her up and they proceeded to walk back to Schneider's friend's house. At this point, Grayson testified that Ellison charged her, "coming at [her] like a rhino," yelling and flailing her arms. Ultimately, Ellison struck the side of Grayson's head and then shoved her, knocking her down and sitting on top of her. It was at this point, according to Grayson, when Ellison was sitting on top of her, that Grayson lashed out at Ellison with the broken beer bottle. Grayson testified that as a result of a genetic disorder, she had two lung surgeries prior to this incident. She testified that when Ellison was sitting on top of her, she could not breathe and was terrified. Grayson lashed out in attempt to get out from Ellison. Grayson admitted that this was likely when Ellison sustained the injury to her arm, but Ellison continued to hit her. Grayson testified that she was not sure where any other injuries to Ellison occurred. Grayson sustained an injury to her hand as a result of wielding the broken beer bottle.

{¶ 16} Grayson testified that when someone finally pulled Ellison off of her, she got in her car and drove back to Mansfield with Schneider. Grayson testified that she did not contact the police after this incident. Grayson testified that her

relationship with Schneider lasted until December 6, 2019, and she has not seen him since then.

{¶ 17} Defense counsel also called Schneider as a witness at trial. Schneider testified that he had been married to Ellison's mother, but was separated from her at the time of the incident in this case. He identified Grayson at trial and testified that they were dating at the time of this incident and had driven to West 93rd Street to drink with friends. Schneider testified that he and Grayson were talking to Tawney's fiancé outside of her house when Tawney came out of the house yelling at them. According to Schneider, he and Grayson then left and started to walk back to another friend's house down the street. At this point, Ellison came driving down the street, almost hit him and Grayson, and jumped out of her car and started screaming at them. Schneider testified that Ellison's brother also got out of the car and attempted to push Schneider but did not.[1] According to Schneider, Ellison's brother did not push Grayson or throw her through the air.

{¶ 18} Schneider confirmed that he and Grayson had both been drinking throughout the day before the incident. Schneider also testified that Grayson had had about eight beers that day.

---

[1] Schneider was the only witness to testify that Ellison's brother had been in the car with her. Ellison testified that her brother had been in the neighborhood at the time of the altercation and eventually came over to move her car. Grayson testified that an unidentified tall man approached her and Schneider at the start of the altercation, but the record is unclear as to whether this man was Ellison's brother or another unidentified person.

{¶ 19} Schneider testified that Grayson and Ellison began wrestling and fighting with each other. He further testified that he did not want to get involved in the fight, saying "let them fight." At one point, Schneider heard glass break and assumed that it was the beer bottle Grayson had been holding. Schneider testified that he did not see Grayson hit Ellison with the beer bottle, but he did see the cut on her arm and assumed that Ellison had fallen on top of Grayson's beer bottle. According to Schneider, Ellison threw the first punch and was the aggressor in the situation. After the fight stopped, Schneider testified that he and Grayson got back in Grayson's car and left.

{¶ 20} Following this testimony, defense counsel renewed its Crim.R. 29 motion for acquittal, which the court denied.

{¶ 21} On January 5, 2021, the court found Grayson guilty of both counts of felonious assault and referred her to the probation department for preparation of a presentence investigation and report.

{¶ 22} On February 9, 2021, the court held a sentencing hearing. The court heard from defense counsel, three of Grayson's family members, Grayson herself, and the assistant prosecuting attorney. The court stated that it had reviewed the presentence investigation report. The parties agreed that the two counts of felonious assault were allied offenses, and the state elected to proceed with sentencing on Count 2. After engaging Grayson in a conversation about her alleged medical conditions, the court continued the matter to allow Grayson to submit relevant medical records.

**{¶ 23}** On March 2, 2021, the court reconvened for the continued sentencing hearing. The court reviewed Grayson's medical records, showing that Grayson has a chronic obstructive lung disease. The court sentenced Grayson to 90 days in jail, six months of home detention, and five years of community control. On March 22, 2021, Grayson appealed. Grayson raises three assignments of error for our review:

> I. The trial court erred to the prejudice of the defendant in finding that the defendant did not act in self-defense.

> II. The state failed to present sufficient evidence to prove each and every element of the offense beyond a reasonable doubt.

> III. Appellant's conviction was against the manifest weight of the evidence.

**Legal Analysis**

**I. Self-Defense**

**{¶ 24}** In her first assignment of error, Grayson argues that the court erred to her prejudice by finding that Grayson was not acting in self-defense. Under Ohio law, a person is permitted to act in self-defense. "Self-defense claims are generally an issue of credibility." *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. "If evidence presented at trial tends to support the conclusion 'that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another.'" *Id.*, quoting *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1).

**{¶ 25}** As an initial matter, we acknowledge that it is not clear from the record whether the defense of self-defense should have been available to Grayson at

trial. "A defendant claiming self-defense 'concedes that he had the purpose to commit the act, but asserts that he was justified in his actions.'" *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶ 38, quoting *State v. Talley*, 8th Dist. Cuyahoga No. 87413, 2006-Ohio-5322, ¶ 45. Because self-defense presumes an intentional, willful use of force, "'when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense.'" *Id.*, quoting *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 54.

{¶ 26} Here, Grayson was charged with two counts of felonious assault. Count 1 alleged that Grayson "did knowingly cause serious physical harm to Kelly Ellison" in violation of R.C. 2903.11(A)(1). Count 2 alleged that Grayson "did knowingly cause or attempt to cause physical harm to Kelly Ellison by means of a deadly weapon or dangerous ordnance, to wit: a broken glass bottle" in violation of R.C. 2903.11(A)(2). Grayson's trial testimony was inconsistent with respect to whether she injured Ellison at all, let alone whether the injuries she inflicted on Ellison were an intentional use of force or she intended to cause Ellison harm.

{¶ 27} Grayson testified that she swung at Ellison while Ellison was sitting on her chest. Despite testifying at various points that she "[could] not move at all" and "could barely even move [her] arms," Grayson testified that she "was swinging at [Ellison] with the bottle * * * trying to get her off of me." Grayson testified that she could not breathe and was terrified and that was when she lashed out and cut Ellison on the arm. She went on to testify that because of the way Ellison was

positioned on top of her, Grayson could not see where or whether Ellison sustained any injuries. At one point, Grayson testified that she was "not sure what injuries [she] caused." At a different point in her testimony, Grayson testified that she "didn't get a chance to hit [Ellison]" and that she "didn't hit her with the bottle." Therefore, Grayson did not testify that she intended to hit Ellison in the arm with the broken bottle. With respect to the laceration Ellison sustained to her face and neck, Grayson's testimony contained no reference to this injury, let alone any indication that Grayson intended to cause Ellison harm in this way. Viewed in its totality, Grayson's testimony does not contain an admission that she committed the offense of felonious assault as charged in Count 1 and Count 2.[2] Generally, where a defendant does not admit to the relevant charged conduct, the defense of self-defense is not available to them. *Davis* at ¶ 40.

{¶ 28} Notwithstanding this weakness in Grayson's self-defense theory, our review of the record supports a conclusion that the trial court did not err in finding that Grayson was not acting in self-defense.

{¶ 29} To establish that the affirmative defense of self-defense does not apply, the state must prove at least one of the following elements beyond a reasonable doubt: (1) that the defendant was at fault in creating the situation giving rise to the affray in which the force was used or (2) the defendant did not have reasonable grounds to believe or an honest belief that he or she was in imminent

---

[2] In addition to these inconsistencies in her testimony, Grayson's theory of self-defense is undermined by her sufficiency-of-the-evidence argument presented in her second assignment of error.

danger of bodily harm or (3) the defendant used more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.).

{¶ 30} Grayson argues that the evidence presented at trial shows that she was not at fault in creating the situation giving rise to the affray in which force was used. We disagree. The evidence presented at trial was that Grayson and Schneider were standing in the middle of the road when Ellison approached them in her car and honked her horn for them to get out of the road. All eyewitnesses testified that Schneider and Grayson were standing in the middle of the road when they were approached by Ellison's vehicle. Multiple witnesses testified that not only did Grayson fail to get out of the middle of the road, she slammed her fist into the side of Ellison's car and began shouting threats and obscenities at Ellison. While Grayson disputes hitting Ellison's car, her brief concedes that she was "verbally aggressive," and the evidence presented at trial suggested that Grayson was belligerent. Grayson's own testimony at trial was that she had been drinking. These actions gave rise to the physical altercation that ensued between the women. Therefore, Grayson was at fault in creating the situation giving rise to the affray in which the force was used. Because this finding is sufficient to conclude that Grayson was not acting in self-defense, we will not address the other two elements outlined in *Jacinto*: whether Grayson had a reasonable belief that she was at risk of bodily harm or whether she used more force than was reasonably necessary.

{¶ 31} Because the state established that Grayson was at fault in creating the situation, the trial court did not err in finding that Grayson was not acting in self-defense. Therefore, we overrule Grayson's first assignment of error.

## II. Sufficiency of the Evidence

{¶ 32} In Grayson's second assignment of error, she argues that the state failed to present sufficient evidence of each and every element of the offenses beyond a reasonable doubt. Specifically, Grayson argues that the state failed to establish that the broken beer bottle constitutes a deadly weapon or dangerous ordnance. Grayson also argues that she was lashing out to free herself from Ellison, not to knowingly cause Ellison harm.

{¶ 33} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 34} Count 2 required the state to prove that Grayson knowingly caused or attempted to cause Ellison physical harm by means of a deadly weapon or dangerous ordnance in the form of a broken glass bottle in violation of R.C.

2903.11(A)(2). R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Grayson argues that the broken bottle in this case cannot constitute a deadly weapon because, although the cut to Ellison's face and neck was close to her jugular, Ellison's jugular was not actually injured. This argument ignores the definition of a "deadly weapon" in R.C. 2923.11(A), is at odds with case law from this and other Ohio courts, and defies logic. The test for whether something is a deadly weapon is not whether it in fact inflicted a fatal injury, but whether it is capable of doing so. A firearm does not become a deadly weapon only when someone suffers a fatal gunshot wound; its capability of inflicting death renders it a deadly weapon. Further, glass bottles and mugs have repeatedly been found to constitute a deadly weapon. *State v. Melendez*, 8th Dist. Cuyahoga No. 97175, 2012-Ohio-2385, ¶ 15, citing *State v. Chappell*, 8th Dist. Cuyahoga No. 79589, 2002 Ohio App. LEXIS 702 (Feb. 21, 2002); *State v. Blaine*, 8th Dist. Cuyahoga No. 85131, 2005-Ohio-3831; *State v. Chancey*, 8th Dist. Cuyahoga Nos. 75633 and 76277, 2000 Ohio App. LEXIS 575 (Feb. 17, 2000). We are not persuaded by Grayson's argument. We find that the state established beyond a reasonable doubt that Grayson wielded a deadly weapon.

{¶ 35} With respect to Grayson's argument that she did not act knowingly, we are similarly unpersuaded. Evidence was presented at trial that Grayson was belligerent and immediately started shouting threats and obscenities at the victim in this case. Evidence was also presented that Grayson bent down and smashed her

beer bottle on the ground before striking Ellison multiple times with the bottle. This evidence, viewed in the light most favorable to the prosecution, is sufficient to establish beyond a reasonable doubt that Ellison acted knowingly when she struck Ellison with a glass bottle. For these reasons, we find that the state presented sufficient evidence to support all elements of both counts of felonious assault. Therefore, Grayson's second assignment of error is overruled.

## III. Manifest Weight

{¶ 36} In her third and final assignment of error, Grayson argues that her convictions were against the manifest weight of the evidence. In support of this argument, Grayson reiterates that various conflicts in the evidence should have been resolved in her favor. Specifically, she asserts that Ellison was the aggressor in this situation, and that Grayson only struck Ellison with the broken bottle because she was fighting for her life. We disagree.

{¶ 37} Unlike a challenge to the sufficiency of the evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder.

> Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such

> a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.), citing *Thompkins* at 390.

{¶ 38} Grayson's version of events suggesting that Ellison was the aggressor in the situation was not entirely credible. She described being thrown 15 feet through the air, after which she calmly got up and began to walk away. According to Grayson, the beer bottle she was holding broke when she was thrown through the air. Miraculously, she maintained her grip on the bottle throughout the duration of this incident, even when she was subsequently shoved to the ground by Ellison.

{¶ 39} As discussed in the foregoing analysis of Grayson's first assignment of error, her testimony contained significant inconsistencies with respect to whether she was acting in self-defense, and even whether she was aware of the injuries she inflicted on Ellison. These inconsistencies alone could have supported the trial court's credibility determination. These inconsistencies, together with Grayson's far-fetched version of events, and testimony from Grayson and others that she was at a minimum intoxicated, if not belligerent, support the trial court's conclusion that Grayson was the aggressor in the situation. Therefore, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice. For these reasons, we overrule Grayson's third assignment of error.

**{¶ 40}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR