[Cite as *State v. Lanier*, 2022-Ohio-2409.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,          :

                                          No. 110826

     v.                           :

TAYVON LANIER,                          :

     Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 14, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-647467-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Cleary, Assistant Prosecuting Attorney, *for appellee.*

Michael P. Maloney, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Tayvon Lanier ("Lanier") appeals his convictions and sentence and asks this court to reverse his convictions and vacate his sentence. After a thorough review of the pertinent facts and the law, we affirm.

{¶ 2} Lanier was indicted on one count of murder, an unclassified felony, in violation of R.C. 2903.02(A); one count of murder, an unclassified felony, in violation of R.C. 2903.02(B); three counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11; one count of voluntary manslaughter, a first-degree felony, in violation of R.C. 2903.03; and one count of having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13. Counts 1 through 6 included one- and three-year firearm specifications. Prior to trial, Lanier executed a jury trial waiver as to having weapons while under disability and elected to have the offense tried to the trial court. The state made a motion to dismiss the voluntary manslaughter count. The trial court granted the motion.

{¶ 3} After a jury trial, Lanier was found guilty on all counts, and the judge found Lanier guilty on the offense of having weapons while under disability. The trial court sentenced Lanier to a total of 25 years to life in prison, with an indefinite sentence of four to six years under Ohio's Reagan Tokes sentencing law.

I.     **Facts and Procedural History**

{¶ 4} On December 31, 2019, and early January 1, 2020, Shayana James ("James") and Tatiyana Waits ("Waits") hosted a New Year's Eve party for their friends in Bedford Heights. Lanier arrived at the party sometime after midnight. James and Lanier recorded a video on James's phone showing Lanier waving around a loaded gun during the party. On the video recording, Lanier took the clip out from the gun to show that it was full of bullets.

{¶ 5} During the party, Waits received several text messages from her boyfriend, G'Morrow Harden ("Harden"), the decedent. Waits left the party to meet Harden downstairs so she could leave with him. Shortly thereafter, the other guests started leaving the party and witnessed Harden and Waits in a heated verbal altercation. Harden became more agitated when he observed other men leaving the party and began threatening them. According to witnesses, Harden stated "I'll beat everybody ass," and "I don't even have a gun. I don't care."

{¶ 6} Lanier and James testified that Harden and Waits stepped out of the apartment lobby and returned to Harden's vehicle. Harden and Waits exited the vehicle and reentered the lobby where Harden continued to threaten the group. Once in the lobby, Harden and Waits continued to argue, with Waits standing in front of Harden. At this point, Lanier drew and fired his gun striking Harden nine times and Waits twice. Harden died as a result of his injuries, while Waits suffered gunshot wounds to her arm.

{¶ 7} Officer William Palchesko ("Officer Palchesko") responded to the incident. He testified that when he arrived at the scene, he observed a woman standing in front of the building pointing to a man running from the north side of the building. The woman told Officer Palchesko that the man running was the one who was shooting. Officer Palchesko chased the man, and the man attempted to hide under a car. Officer Palchesko and other officers apprehended the man, who

was identified as Lanier. The officers retrieved a gun from Lanier's right front pocket.

{¶ 8} After arresting Lanier, the officers entered the apartment building and observed Harden sitting in the corner with Waits, unconscious and laying on top of him. After checking on Waits, she suddenly awoke but was unable to clearly express what happened.

{¶ 9} Responding Officer Phillip Chow ("Officer Chow") testified that when he arrived at the scene, he observed Officer Palchesko chasing someone. Officer Chow exited his vehicle to aid Officer Palchesko in the chase. When Officer Chow caught up with Officer Palchesko, he observed Lanier attempting to crawl under a car. Officer Chow's body camera footage shows Lanier under a car and Officer Palchesko attempting to retrieve him. While the officers were arresting Lanier, he claimed that he was hiding under the car because someone was shooting.

{¶ 10} Detective Glenn Daniels ("Detective Daniels") testified that at the crime scene, the detectives collected 15 cartridge casings, and 14 of those casings were found near Harden and were from Lanier's gun. The other casing was found in the rear of the building and was not part of the crime scene. Detective Daniels testified that he administered a gunshot residue test on Lanier's hands, and Lanier's hands tested positive for gunshot primer residue. The forensic scientist, Michael

Roberts ("Roberts") testified that the 14 cartridge casings collected at the scene near Harden were all fired from the gun that was recovered from Lanier.

{¶ 11} James, who witnessed the shooting, testified at trial that Harden was not physically aggressive toward anyone and that Harden explicitly stated that he did not have gun. She also testified that she did not at any time fear Harden and that he was angry with Waits for being at a party with other men.

{¶ 12} Jasmine King ("King"), another party attendee, testified that she observed Harden and Waits arguing in the lobby. King stated that Harden was initially angry with Waits, but then became angry with the group when he observed the men coming from the party. King also testified that Harden did not get physical with anyone and that he did not have a gun.

{¶ 13} Detective Ericka Payne ("Detective Payne") testified that she was assigned to investigate the homicide. She initially spoke with Waits at the hospital, but after being discharged, Waits refused to cooperate with the case. The state introduced Waits's medical report regarding her injuries at trial, and James and King also testified that they witnessed Waits being shot by Lanier and falling on top of Harden. Detective Payne also identified Waits's medical records at trial and testified that Waits was shot twice in the arm causing a broken bone.

{¶ 14} Lanier testified in his own defense. He stated that Harden was specifically yelling, screaming, and threatening him. He also stated that Harden was accusing the men of being with Waits. Lanier testified that he repeated to Harden

that he should calm down and that he was not "dealing with [Harden's] girl." (Tr. 935.) Lanier stated that he was trying to diffuse the situation, but then he thought that Harden went to his car to get a gun. When Harden returned to the building, Lanier started shooting and then ran. Lanier admitted that his shots killed Harden and injured Waits.

{¶ 15} At the end of the trial, Lanier was found guilty of all counts and sentenced to 25 years to life in prison, with an indefinite sentence of four to six years under Ohio's Reagan Tokes sentencing law on the felonious assault convictions. Lanier filed an appeal assigning four errors for our review:

1.  The state presented insufficient evidence to prove an exception to self-defense;

2.  The trial court erred in denying appellant's Crim.R. 29 motion for acquittal when there was insufficient evidence to prove felonious assault in counts four and five of the indictment;

3.  The trial court erred in admitting Waits's medical records, and her inadmissible statements contained therein; and

4.  The indefinite sentence imposed upon appellant under the Ohio Reagan Tokes Act was unconstitutional, imposed in violation of the separation-of-powers doctrine.

## II. Self-Defense

### A. Standard of Review

{¶ 16} Lanier argues that the state did not provide sufficient evidence to sustain a conviction because it failed to prove an exception to self-defense.

When reviewing a claim by a defendant that evidence supports his or her claim of self-defense, the manifest-weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself or herself from culpability.

*State v. Jackson*, 8th Dist. Cuyahoga No. 108493, 2020-Ohio-1606, ¶ 26, citing *State v. Colon*, 8th Dist. Cuyahoga No. 106031, 2018-Ohio-1507, ¶ 16; *see also State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 44-45 (10th Dist.) (Defendant's argument "that the state failed to prove he did not act in self-defense" is a challenge to the manifest weight of the evidence.).

## B. Law and Analysis

{¶ 17} Lanier contends that the state failed to prove that he was at fault for creating the situation that led to the shooting. "On March 19, 2019, R.C. 2901.05 was amended to provide that the state must prove beyond a reasonable doubt that a defendant did not act in self-defense. *See* Am.Sub.H.B. No. 228." *Id.* at ¶ 16.

R.C. 2901.05(B)(1) provides that a person is allowed to act in self-defense. If, at trial, there is evidence presented that tends to support that the accused person used the force in self-defense, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense. *Id.* When a defendant raises the claim of self-defense, the state bears the burden of proving beyond a reasonable doubt that the defendant was at (1) fault in creating the situation giving rise to the affray; (2) that the defendant did not have a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of force and; (3) that the defendant must not have violated any duty to retreat or avoid danger. These elements remain cumulative.

*Id.* at ¶ 17.

{¶ 18} "Under R.C. 2901.05(B)(1) there are two burdens. The defendant has the initial burden of production, which is the burden of producing evidence 'that tends to support' that the defendant used the force in self-defense." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 18 (8th Dist.). "The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense." *Id.*, citing *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.), citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. "To satisfy this burden, the state must disprove at least one of the elements of self-defense." *Id.*

{¶ 19} A review of the record reveals that this case hinges on element two: Lanier's bona fide belief that he was in imminent danger of death or great bodily harm. Lanier testified that he thought Harden returned from his vehicle with a gun. However, James testified that Harden stated he did not have gun. Witnesses also testified that Harden did not get physical with anyone, although he was aggressive with his tone. There is no evidence from anyone's testimony that Harden was directly threatening Lanier, as Lanier testified. The state proved that Lanier was at fault in creating the situation giving rise to the shooting with Lanier's own testimony that he shot 14 times towards Harden and Waits. Harden did not have a gun nor did he make any gestures toward Lanier that demonstrated he possessed a gun. The witnesses' testimonies do not prove that Lanier had a bona fide belief that he was in imminent danger of death or great bodily harm.

{¶ 20} The state also proved that Lanier did not have a bona fide belief that Lanier was in imminent danger of death or great bodily harm and that his only means of escape from the danger was to use force. Lanier testified that he thought Harden went to his vehicle to retrieve a gun, but Lanier did not see a gun. Lanier also testified that Harden was making threats directly towards him, but witnesses testified that Harden was making general threats to the group, not to any one person. The state also proved that Lanier did not demonstrate that he was in imminent danger of death or great bodily harm.

{¶ 21} "'Self-defense claims are generally an issue of credibility.'" *State v. Grayson*, 8th Dist. Cuyahoga No. 110388, 2021-Ohio-4312, ¶ 24, quoting *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. "If evidence presented at trial tends to support the conclusion 'that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another.'" *Id.* Lanier did not present any evidence at trial that supports his conclusion that he shot Harden in self-defense. Lanier's testimony that he thought Harden had a gun is not supported by witnesses' testimony or the evidence. Lanier shot his gun 14 times, with nine bullets hitting Harden, and the jury did not find Lanier's claims credible.

{¶ 22} Therefore, Lanier's assignment of error is overruled.

### III.  Crim.R. 29 Motion

#### A.  Standard of Review

{¶ 23} Lanier argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal.

> Pursuant to Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence."

*Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 24} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at ¶ 38, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "Sufficiency is a test of adequacy." *Id.*  "We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

#### B.  Law and Analysis

{¶ 25} Lanier contends that the state presented no evidence that he caused Waits's injuries because she never testified as to her injuries and the only evidence

is the medical records that did not identify Lanier as the person who shot Waits. Lanier was charged with felonious assault for shooting Waits.

{¶ 26} R.C. 2903.11(A)(1) and (2) defines felonious assault as:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 27} "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Mondie*, 8th Dist. Cuyahoga No. 108030, 2019-Ohio-5337, ¶ 22, quoting *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19. Lanier admitted during his testimony that he shot both Harden and Waits. From Detective Payne's testimony and Waits's medical records, it was observed that the two bullets broke her arm. However, Waits's medical records did not identify who shot her. James and Lanier testified that Lanier shot Waits. Additionally, the medical records did not need to identify Lanier as the person who shot Waits because Lanier identified himself and testified that he shot Waits. The record supports that there was sufficient evidence to prove Lanier's guilt of felonious assault.

{¶ 28} Therefore, Lanier's second assignment of error is overruled.

## IV. Admitted Medical Records and Statements

### A. Standard of Review

**{¶ 29}** Lanier argues that the trial court erred in admitting Waits's medical records and the statements contained in the medical records. "We review a trial court's evidentiary rulings for an abuse of discretion." *State v. Thompson*, 8th Dist. Cuyahoga No. 109110, 2020-Ohio-5257, ¶ 26, citing *In re J.P.*, 8th Dist. Cuyahoga No. 81486, 2003-Ohio-3522, ¶ 24. "A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable." *Id.*, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

### B. Law and Analysis

**{¶ 30}** Lanier contends that because Waits did not testify at trial, the evidence identifying him as the person who shot Waits is hearsay. Because of our finding in the second assignment of error, we determine that this argument is moot because Lanier identified himself as the person who shot Waits.

**{¶ 31}** Lanier also argues that the evidence violates the confrontation clause of the Sixth Amendment to the United States Constitution that provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *Cleveland v. Johnson*, 8th Dist. Cuyahoga No. 107930, 2019-Ohio-3286, ¶ 13. The Supreme Court has noted that "there is a difference between testimonial statements and non-testimonial statements for the purpose of the Confrontation Clause of the Sixth Amendment." *State v. Reardon*, 168 Ohio App.3d 386, 2006-Ohio-3984, 860 N.E.2d 141, ¶ 13 (6th Dist.), citing *Davis v.*

*Washington*, 547 U.S. 813, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). "Only statements that are testimonial in nature trigger the Confrontation Clause provisions." *Id.*

{¶ 32} Lanier's arguments are misplaced because Waits never identified or accused Lanier of shooting her. In Lanier's trial testimony, he admitted to shooting Waits. (Tr. 944.) The medical records just confirmed his testimony and described her injuries. It was not used to prove that Lanier shot Waits.

{¶ 33} Therefore, Lanier's third assignment of error is overruled.

## V.    Reagan Tokes Law

{¶ 34} In Lanier's fourth assignment of error, he argues that the indefinite sentence imposed upon him under the Reagan Tokes Act was unconstitutional, because it violates the separation-of-powers doctrine. Based on the authority established by this district's en banc holding in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), the challenges Lanier advanced against the constitutional validity of the Reagan Tokes Law have been overruled. *See id*. at ¶ 17-54. Lanier does not advance any novel argument left unaddressed by the *Delvallie* decision. As a result, Lanier's arguments, claiming that his sentence imposed under the Reagan Tokes Law is unconstitutional based on the same arguments presented in *Delvallie*, are overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
EILEEN T. GALLAGHER, J., CONCUR

N.B.  Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Laster Mays, J., concurring in part and dissenting in part).

Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie,* 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.