[Cite as *State v. Tripplett*, 2023-Ohio-4644.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

     Plaintiff-Appellee,                    :

     v.                                               :

     No. 112306

KONSHAWNTE TRIPPLETT,                   :

     Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
        AND REMANDED
**RELEASED AND JOURNALIZED:** December 21, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-670338-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Benjamin Fuchs, Assistant Prosecuting
Attorneys, *for appellee*.

Law Offices of Jaye M. Schlachet, Jaye M. Schlachet, and
Eric M. Levy, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Konshawnte Tripplett, appeals his convictions for two counts of felonious assault and one count of domestic violence against his sister (referred to herein as "sister" or "victim"), which were rendered after a bench trial. For the reasons that follow, we affirm in part, reverse in part and remand.

## I. Procedural History and Facts

{¶ 2} Tripplett met with his sister and another family member at a local bar to discuss a family dispute. Tripplett's sister attempted to intervene in a physical confrontation that occurred between Tripplett and the other family member. Tripplett assaulted his sister by punching her in the face, hitting her with a bottle on the mouth, and choking her. She was able to free herself from Tripplett's grasp. After the attack, the victim left the scene and drove to another area before calling for emergency assistance, telling emergency responders that the assault occurred there and not at the bar. The victim also told police that Tripplett stole her keys and money but testified that she retrieved her keys from the bar the next day. The victim needed stitches on the inside and outside of her mouth to close the wound caused by the bottle. The victim was left with a scar, which she used makeup to conceal.

{¶ 3} At the close of the state's case, Tripplett sought an acquittal under Crim.R. 29 based on his claim that the victim's testimony was incredible as it related to the elements of each crime. The trial court overruled the motion. The trial court found Tripplett guilty of felonious assault under R.C. 2903.11(A)(1) (causing serious physical harm), felonious assault under R.C. 2903.11(A)(2) (causing physical harm

by means of a deadly weapon), and domestic violence under R.C. 2919.25(A) (causing physical harm to a family member). The trial court requested a presentence-investigation report and set a date for a sentencing hearing. At his sentencing hearing, Tripplett did not raise the issue of whether any of his offenses merged as allied offenses of similar import. The trial court imposed an 18-month term of community-control sanctions for each offense, with conditions.

{¶ 4} Tripplett filed a delayed notice of appeal and raises four assignments of error for our review:

> I. The trial court committed plain error when it failed to merge appellant's convictions.
>
> II. Appellant's rights under the Sixth Amendment to the United States Constitution made applicable to the state of Ohio through the Fourteenth Amendment were violated when he received ineffective assistance of trial counsel.
>
> III. The three convictions entered against appellant must be vacated with appellant acquitted of all charges as the convictions are not supported by sufficient evidence.
>
> IV. The three convictions entered against appellant must be vacated and the case remanded for a new trial as the convictions are against the manifest weight of the evidence presented at trial.

## II. Law and Analysis

### A. Sufficiency and manifest weight of the evidence

{¶ 5} For ease of review, we will first discuss Tripplett's third and fourth assignments of error in which Tripplett claims his convictions were not supported

by sufficient evidence and were against the manifest weight of the evidence.[1]

{¶ 6} The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**Serious physical harm**

{¶ 7} Tripplett claims that the state (1) failed to prove serious physical harm for the purpose of the R.C. 2903.11(A)(1) felonious assault conviction; (2) failed to prove that the bottle constituted a "deadly weapon" for the purpose of the R.C. 2903.11(A)(2) felonious assault conviction; and (3) failed to demonstrate that the victim and Tripplett were biologically related for the purposes of the R.C. 2919.25(A) domestic violence conviction.

---

[1] If we were to find that there was insufficient evidence to support his convictions or that they were against the manifest weight of the evidence, it would not be necessary to consider the remaining assignments of error. *See* App.R. 12.

{¶ 8} "Serious physical harm" is defined, in pertinent part, as "[a]ny physical harm that carries a substantial risk of death"; "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity"; or "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement." R.C. 2901.01(A)(5).

{¶ 9} Tripplett contends that there was insufficient evidence to support the element of "serious physical harm" because the state failed to show that the victim lost consciousness. This court has held that the temporary loss of consciousness, "irrespective of duration," constitutes a temporary substantial incapacity and, therefore, is considered a serious physical harm under R.C. 2901.01(A)(5). *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23. The victim testified that she was "fading away" before "all of a sudden" regaining the ability to fight free. Thus, according to Tripplett, she never lost consciousness and any harm suffered does not rise to the level of serious physical harm.

{¶ 10} The victim testified that Tripplett assaulted her by punching her in the head, hitting her in the face with a bottle, and choking her. Because Tripplett was convicted of one count of felonious assault (serious physical harm), the state had to show that only one of his acts caused serious physical harm, not that each or more than one of his actions against his sister caused this harm.

{¶ 11} "'This court has consistently held that the need for stitches constitutes serious physical harm for purposes of a felonious assault conviction." *State v.*

*Wynn*, 8th Dist. Cuyahoga No. 103824, 2017-Ohio-4062, ¶ 8, quoting *State v.*

*Studgions*, 8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480, ¶ 10.

{¶ 12} The victim testified as follows:

When the incident first took place, my brother hit me in the mouth with a bottle and the bottle split the mouth open. And my lip, it was really hard to talk, the lip was like super swole. And it got split open from the outside and also from the inside.

Q. So there was like a gash on your lip?

A. Yeah, but the skin was kind of flopped open, so it took a plastic surgeon to stitch me up. He did a good job.

(Tr. 31).

{¶ 13} The victim was also asked:

Q. So you did go to the hospital?

A. Yes.

Q. And you received treatment for the —

A. My injuries.

Q. — the cut on your face?

A. Yes.

Q. And you said you received stitches?

A. That is correct.

Q. How many stitches did you receive?

A. I believe I received three to four on the outside of my mouth, maybe three, and then I had some on the inside of my mouth that I received. So probably like six stitches.

(Tr. 38.)

{¶ 14} As of the day of trial, the victim had a visible scar, which she testified she uses makeup to conceal. The evidence established that the stitches the victim received were caused by Tripplett hitting her in the face with a bottle and the injury left a scar; therefore, the state showed sufficient evidence that Tripplett caused serious physical harm.

### Unnecessary to Conclude Whether Choking Cause Serious Physical Harm to Victim

{¶ 15} The dissent complains that we ignore whether Tripplett's act of choking constituted serious physical harm and sua sponte concludes that it did. We do not; we simply need not address it. Tripplett was convicted of only *one* count of felonious assault – serious physical harm; therefore, the state had to show that only *one* of his acts (either the bludgeoning with the bottle or the choking) caused serious physical harm. Because we determine the state showed by sufficient evidence that Tripplett caused serious physical harm with the bottle, it would be superfluous to also determine whether the choking caused serious physical harm.

{¶ 16} The dissent claims that we must determine whether the act of choking caused serious physical harm because the state asked the court to consider the loss of consciousness as a basis to convict Tripplett. The state never argued that the choking met the element of "serious physical harm" for a felonious assault conviction. In its opening statement, the state concedes that the victim did not lose consciousness ("the victim was strangled to the point where she [ ] almost lost consciousness"). The victim testified she almost, but did not, lose consciousness. In

closing argument, the state stated that Tripplett choked his sister "to the point where she thought she was going to lose consciousness." Much to the dissent's chagrin, we decline to adopt an argument not set forth by either party at trial.

{¶ 17} Even if we considered whether Tripplett's act of choking the victim constituted serious physical harm, we would conclude that it did *not* and the state did not show sufficient evidence of physical harm via choking. The victim testified that Tripplett put her in a chokehold, told her to "go to sleep," and that she was "kind of fading away, then all of the sudden I got strength and I fought him off * * * ." There is no evidence in the record, either testimonial or through medical records, that the victim lost consciousness, even for a short time or that the force applied in the chokehold was one that carried a substantial risk of death. *See* R.C. 2901.01(A)(5)(b) (serious physical harm is any physical harm that carries a substantial risk of death).[2]

{¶ 18} The state showed sufficient evidence of serious physical harm via the bottle; it is therefore unnecessary to determine whether the act of choking also caused serious physical harm.

---

[2] The dissent attempts to twist the statement that "[t]here is no evidence in the record, either testimonial or through medical records, that the victim lost consciousness, even for a short time *or* that the force applied in the chokehold was one that carried a substantial risk of death" into an adoption of a "bright-line conclusion" that "temporary, substantial incapacity" under R.C. 2901.01(A)(5) means "total loss of consciousness." This attempt is rejected simply by giving words their plain meaning.

**Bottle was a Deadly Weapon**

{¶ 19} Tripplett next claims that the state failed to prove that the bottle constituted a deadly weapon for the purpose of the R.C. 2903.11(A)(2) conviction because the state presented no evidence regarding the composition of the bottle, i.e., whether it was glass, aluminum, or plastic. According to Tripplett's theory, only a glass bottle can constitute a deadly weapon because the other materials would not be substantial enough to cause a death, and moreover, the evidence in this case demonstrated that despite Tripplett repeatedly striking the victim in the face with the bottle, the victim only needed stitches for a "split lip."

{¶ 20} R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *Id.* "The test for whether something is a deadly weapon is not whether it in fact inflicted a fatal injury, but whether it is capable of doing so." *State v. Grayson*, 8th Dist. Cuyahoga No. 110388, 2021-Ohio-4312, ¶ 34. Generally, "a trier of fact 'is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use.'" *State v. Dean*, 9th Dist. Lorain No. 18CA011290, 2019-Ohio-1391, ¶ 10, quoting *State v. Vondenberg*, 61 Ohio St.2d 285, 289, 401 N.E.2d 437 (1980). The size and composition of the item wielded as a weapon is generally immaterial. "No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause death when it is wielded with the requisite intent and force." *State v. Moody*, 5th Dist. Licking No. 09 CA 90, 2010-Ohio-3272, ¶ 40, citing *In re Smith*, 142 Ohio

App.3d 16, 753 N.E.2d 930 (8th Dist.2001), and *State v. Deboe*, 62 Ohio App.2d 192, 406 N.E.2d 536 (6th Dist.1977). Thus, the legal test is not based on the outcome of the assault, but rather the capability to turn the everyday item into and be used as a deadly weapon. Generally, what constitutes a "deadly weapon" is an issue for the trier of fact.

{¶ 21} Tripplett's argument is based on his claim that the state must prove the composition of the bottle in order to demonstrate its capability of being used as a deadly weapon. The legal standard, however, depends on the reasonable inferences derived from the facts and circumstances of the use of the weapon in each particular case. In this case, the victim testified that she was repeatedly struck with the bottle with sufficient force to cause serious physical harm. Tripplett then tried to "finish [her] off" by choking her to the point that she was "fading away." Under these facts and circumstances, the trier of fact was permitted to draw an inference from Tripplett's use of the bottle in the attack that he meant the bottle to be capable of "finishing [the victim] off" and when that failed despite the level of force exerted, he resorted to choking the victim. We cannot determine, as a matter of law, that the composition of the bottle is legally significant when there is some evidence that the bottle was wielded as a deadly weapon. *See, e.g., State v. Bitting*, 9th Dist. Summit No. 28317, 2017-Ohio-2955, ¶ 13 (concluding that a plastic BB gun could constitute a "deadly weapon" when used as a bludgeon).

**Domestic Violence – Family or Household Member**

{¶ 22} And finally, as to the sufficiency of the evidence, Tripplett claims that the state failed to present sufficient evidence that the victim was his biological sister for the purposes of the domestic violence conviction.

{¶ 23} As is relevant to this case, R.C. 2919.25(F)(1)(a)(ii) defines a family or household member as a person related by consanguinity to the offender who has resided with the offender. The victim testified that she and Tripplett were related through their mother and "she and [Tripplett] were moved around together by family until they were separated when she was around six years old." Tripplett has not identified any authority supporting a claim that the state is required to prove a biological relationship through genetic testing or birth documentation, and this court need not independently search for that authority. As it stands, the victim's testimony is sufficient to establish her familial relationship to Tripplett for the purposes of R.C. 2919.25.

**Convictions Were Not Against Manifest Weight of the Evidence**

{¶ 24} Next, Tripplett claims his convictions are against the weight of the evidence because the victim lied to investigators about where the attack occurred, who was involved, and made claims regarding alleged thefts that were not supported by evidence.

{¶ 25} To evaluate a claim whether a verdict is against the manifest weight of the evidence

we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial.

*State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 26} Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} Although the victim's testimony may have presented credibility problems for the state's case, Tripplett has not demonstrated that this is an extraordinary case that requires reversal. *Thompkins* at 387. There is no dispute that the victim was treated for the injuries that align with her version of the attack. She identified her attacker as her brother, Tripplett. Although there may have been some inconsistencies in the victim's testimony, the trial court, as trier of fact, was in the best position to determine her credibility. We find no reason to deem the victim's testimony inherently unreliable with respect to the elements of the crimes committed, and therefore, we cannot conclude that the trial court lost its way in convicting Tripplett.

{¶ 28} In light of the above, the third and fourth assignments of error are overruled.

## B. Allied Offenses and Ineffective Assistance of Trial Counsel

{¶ 29} Next, Tripplett argues that his convictions were allied offenses of similar import and should have merged for purposes of sentencing. He also argues that his counsel was ineffective for failing to object when the trial court sentenced him without merging his convictions.

{¶ 30} R.C. 2941.25, Ohio's allied-offenses statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 31} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses, if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31. "The defendant bears the burden of establishing his [or her] entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act."

*State v. Jones*, 2023-Ohio-380, 208 N.E.3d 321, ¶ 175 (8th Dist.), citing *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661.

{¶ 32} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26.

{¶ 33} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *Jones* at ¶ 177, quoting *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38. Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Jones* at *id.*, quoting *Woodard* at *id.*

{¶ 34} For purposes of R.C. 2941.25(B), animus has been defined as "'"purpose or, more properly, immediate motive."'" *State v. Priest*, 8th Dist. Cuyahoga No. 106947, 2018-Ohio-5355, ¶ 12, quoting *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *Jones*

at ¶ 178, quoting *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 12. Animus is often difficult to prove directly but can be inferred from the surrounding circumstances. *Jones* at *id.*, citing *Lane* at *id.*

{¶ 35} Our review of whether two offenses are allied offenses of similar import is generally de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. However, in this case, Tripplett did not object to the imposition of multiple sentences. In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, the Ohio Supreme Court held

> [a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Id.* at ¶ 3.

{¶ 36} As to Tripplett's claim that his counsel was ineffective for failing to object when the court sentenced him on three separate convictions, in order to prevail on a claim of ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). An appellant must show that counsel's performance was deficient and must additionally show prejudice resulting from the deficient performance. *Id.* at 687.

**Felonious Assault Offenses Merge**

{¶ 37} As discussed, Tripplett was convicted of one count of felonious assault, under R.C. 2903.11(A)(1) (causing serious physical harm) and one count of felonious assault under R.C. 2903.11(A)(2) (causing physical harm by means of a deadly weapon).

{¶ 38} Recently, in *In re J.O.*, 8th Dist. Cuyahoga No. 111747, 2023-Ohio-2293, this court found plain error when the trial court failed to merge juvenile adjudications of delinquent on two counts of felonious assault.[3] The appellant was charged with one count of felonious assault under R.C. 2903.11(A)(1) (serious physical harm) and one count of felonious assault under R.C. 2903.11(A)(2) (deadly weapon) stemming from shooting another child in the face. This court found that the appellant's convictions should have merged because "the only difference between subsections (1) and (2) is that a deadly weapon was used; however, the same harm was caused by the same act." *Id.* at ¶ 50– 51.

{¶ 39} Likewise, here, the victim testified that her brother hit her in the face with a bottle, she had to go to the hospital and receive multiple stitches, and the injury left her with a scar that she uses concealer to cover up:

> [Tripplett] ended up punching me. We scuffling. Then he took a bottle, hit me in my mouth with the bottle, end up having to get stitches from the inside of my mouth and outside of my mouth. I fell to the ground, he comes behind me and he put me in a choke hold, told me to go to sleep. I was kind of fading away, then all of the sudden I got strength and I fought him off * * *.

---

[3] The dissent states that we "sua sponte" cite *In re J.O.* Not only does this court routinely cite cases the parties fail to mention in appellate briefing or oral argument, but *In re J.O.* was released *after* the parties filed their appellate briefs.

(Tr. 24-25).

{¶ 40} Both felonious assaults were committed with the same act — Tripplett striking his sister in the face multiple times with a bottle. Additionally, the state's theory at trial was that the bottle caused serious physical harm (Tr. 102, Crim.R. 29 argument).

{¶ 41} Tripplett's felonious assault offenses were committed at the same time, at the same location. The offenses were committed with the same animus, to harm his sister. The offenses were also not dissimilar in import; the state did not show that Tripplett's conduct caused separate identifiable harm to the victim.

**Domestic Violence and Felonious Assault Offenses Committed Separately**

{¶ 42} Next, we consider whether the crime of domestic violence should merge. Tripplett was convicted of one count of domestic violence under R.C. 2919.25(A) (causing physical harm to a family member).

{¶ 43} The testimony presented at trial demonstrates the victim suffered separate harm as a result of the felonious assault and domestic violence offenses. In *State v. Norris*, 5th Dist. Licking No. 16 CA 7, 2016-Ohio-5381, the court found that the felonious assault and domestic violence offenses did not merge when the defendant punched the victim in the face (domestic violence) and also cut her in the chest with a knife (felonious assault). The court found that the victim sustained separate injuries from the punch to the face and the knife wound. *Id*. at ¶ 19.

{¶ 44} Likewise, here, Tripplett punched his sister in the head, causing abrasions to her head. The victim testified, "I had to get three to four stitches inside my mouth. * * * my hand was injured too. I also [a] had contusion to my head from the punches I received from [Tripplett]." Thus, the injury from the punch to the victim's head was separate from the harm to the victim's mouth caused by the bottle. Therefore, the domestic violence and felonious assault offenses do not merge and the trial court did not commit plain error by sentencing Tripplett separately on those offenses.

**Prejudice Shown**

{¶ 45} Our analysis does not end here, however. Tripplett must also show that he was prejudiced by the trial court's failure to merge his convictions. In his brief on appeal, Tripplett stated he would suffer the "collateral consequences" of multiple convictions. There are consequences for each felony conviction a defendant receives; the collateral consequences touch just about every facet of that felon's life — from his or her ability to secure and maintain housing and employment, opportunities to seal or expunge convictions, ability to receive government assistance, and the right to vote or ability to own a firearm.

{¶ 46} Thus, we conclude that Tripplett's counsel should have raised the issue of merger with the trial court and the trial court committed plain error when it failed to merge Tripplett's felonious assault convictions.

{¶ 47} We vacate Tripplett's felonious assault sentences and remand for a new sentencing hearing on those counts. On remand, the trial court shall merge the

felonious assault offenses for sentencing, the state shall elect the offense on which it wishes Tripplett to be sentenced, and the trial court shall impose a sentence that is appropriate for that offense.

{¶ 48} The first and second assignments of error are sustained.

{¶ 49} Judgment affirmed in part and reversed in part. Case remanded to the lower court for proceedings in accordance with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

{¶ 50} I dissent from the majority's decision to reverse the sentences imposed on what it deems to be allied offenses. Tripplett failed to timely preserve an allied offense challenge and has forfeited all but plain error. In light of the record and his limited appellate argument that relies on overturned case authority, he has not demonstrated plain error.

{¶ 51} Tripplett met with two of his siblings at a local bar to discuss a family dispute. The victim, Tripplett's sister, attempted to intervene in a physical confrontation that occurred between Tripplett and her brother. Tripplett assaulted his sister by punching her in the face, bludgeoning her with a bottle on the mouth, and then trying to "finish [the victim] off" by choking her to the point that the victim testified to "fading away." As Tripplett was choking his sister, he told her to "go to sleep." She was able to eventually free herself from his grasp. The victim needed stitches on the inside and outside of her mouth to close the wound caused by the bottle. At the close of the state's case, Tripplett sought an acquittal under Crim.R. 29 based on his claim that the victim's testimony was incredible as it related to the elements of each crime. The trial court overruled the motion.

{¶ 52} After the bench trial, the trial court found Tripplett guilty of felonious assault under R.C. 2903.11(A)(1) (causing serious physical harm), felonious assault under R.C. 2903.11(A)(2) (causing physical harm by means of a deadly weapon), and domestic violence under R.C. 2919.25(A) (causing physical harm to a family member). The trial court requested a presentence-investigation-report and set a date for a sentencing hearing. At that hearing, Tripplett did not present any argument, much less mention the potential for merger. The trial court imposed an 18-month term of community control sanctions for each offense, with a 60-day period of GPS monitoring.

{¶ 53} Tripplett filed this delayed appeal advancing four assignments of error: (1) that the trial court committed plain error when it failed to merge the three

convictions; (2) that Tripplett's trial attorney provided ineffective assistance in failing to raise the allied-offense issue at sentencing; and (3) that the three convictions are based on insufficient evidence; or (4) are against the weight of the evidence produced at trial.

{¶ 54} Tripplett first claims the trial court committed plain error by failing to merge the three offenses based on R.C. 2941.25, Ohio's allied-offense statute. He cites *State v. Joseph*, 8th Dist. Cuyahoga Nos. 111276, 111277, and 111278, 2022-Ohio-4404, ¶ 72[4] for the proposition that the trial court has a duty to conduct an allied-offense analysis when multiple charges facially present a question of merger under R.C. 2941.25. *Id.*, citing *State v. Rogers*, 2013-Ohio-3235, 994 N.E.2d 499, ¶ 27 (8th Dist.). That proposition of law, however, was reversed in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, with the Ohio Supreme Court holding that the "accused bears the burden of proof to demonstrate plain error on the record * * * and must show 'an error, *i.e.*, a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.'" *Id.* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Even if the error is "obvious," the defendant is required to demonstrate that the error affected the outcome of the proceeding, in other words, a "reasonable probability that the error

---

[4] In *Joseph*, the offender was convicted of two counts of having weapons while under disability under R.C. 2923.13 based on a single incident in which police officers arrested the offender in possession of firearms. The state contended that his prior conviction established the disability, but that the offender was also a fugitive from justice because he attempted to evade police executing a search warrant for the purposes of the separate animus analysis. *Id.* at ¶ 74.

resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims." *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶ 55} Tripplett's entire argument is based on the claim that the three separate convictions were based on a single course of conduct. According to his argument, it was therefore necessary to merge the convictions under *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. Tripplett has not, however, demonstrated prejudice. This should have disposed of both the first and second assignments of error in light of the interwoven standard.

{¶ 56} Under *Ruff*'s analysis, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if (1) the offenses are dissimilar in import or significance; (2) the offenses were committed separately; *or* (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus. Upon plain error review, a defendant must demonstrate that none of the exceptions to merger exist.

{¶ 57} Tripplett's claims that all three acts of punching the victim, bludgeoning her with the bottle, and choking her nearly to the point of total unconsciousness, were part of the continuing-course-of-conduct, and therefore, the trial court was obligated to merge the offenses.

{¶ 58} He cites no authority for a broad proposition that allied-offense analysis considers a continuing course of conduct to form the basis of the merger, a position seemingly adopted by the majority in contravention of precedent from this district. *See State v. Head*, 8th Dist. Cuyahoga No. 111562, 2023-Ohio-1364, ¶ 49, citing *State v. Rucker*, 2020-Ohio-2715, 154 N.E.3d 350, ¶ 24 (8th Dist.). R.C. 2941.25, in fact, does not reference a course of conduct exception to multiple convictions, and Tripplett's argument has already been overruled by a panel from this district. *See id.*[5]

{¶ 59} The majority's sua sponte reliance on *In re J.O.*, 8th Dist. Cuyahoga No. 111747, 2023-Ohio-2293, for the proposition that a single act cannot constitute two offenses, is misplaced. The state did not rely on the act of bludgeoning the victim with the bottle for both felonious assault convictions: the state expressly relied on the loss of consciousness to substantiate the serious physical harm element. In fact,

---

[5] The legislature does refer to a "course of conduct" with respect to capital sentencings under R.C. 2929.04(A)(5), so the legislature is aware of the distinction that language has on sentencing analysis. The closest analog for the continuing-course-of-conduct theory under R.C. 2929.14, as it relates to felony sentencing, is the exception to imposing multiple sentences for firearm specifications. Under the separate test for imposing multiple firearm specifications, R.C. 2929.14(B)(1)(b) provides that "a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." (Emphasis added.) That same act or transaction language does not apply to the allied-offense analysis either. *See, e.g., State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 200-214. The three different methods of committing the criminal acts against the victim in this case can constitute separate acts or separate harms. *See, e.g., State v. Nicholas*, 66 Ohio St.3d 431, 435, 613 N.E.2d 225 (1993) (holding that three rape charges arising from vaginal intercourse, cunnilingus, and digital penetration of the vagina did not merge because they were based on separate conduct); *State v. McSwain*, 8th Dist. Cuyahoga No. 105451, 2017-Ohio-8489, ¶ 47 (the three acts of rape and one act of GSI were separately committed despite the fact the rapes occurred during one course of continuing conduct).

Tripplett conceded in his appellate briefing that the loss of consciousness could form the basis of the felonious assault conviction predicated on serious physical harm. The state relied on this concession in its appellate briefing to argue that the loss of consciousness constituted a serious physical harm for the purposes of the sufficiency-of-the-evidence review. The majority's discussion ignores the arguments presented and fails to provide the state an opportunity to respond to the majority's claim that only the bludgeoning conduct underlies the serious physical harm element.

{¶ 60} "Serious physical harm" is defined, in pertinent part, as "[a]ny physical harm that carries a substantial risk of death," "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," *or* "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement." R.C. 2901.01(A)(5). With respect to choking conduct, it has been recognized that the temporary loss of consciousness, "irrespective of duration," constitutes a temporary substantial incapacity and, therefore, is considered a serious physical harm under R.C. 2901.01(A)(5). *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23. Tripplett has cited no authority specifically defining "temporary, substantial incapacity" to mean a "total loss of consciousness" of any specific duration. *See* App.R. 16(A)(7).

{¶ 61} The majority takes up that mantle and declares that "temporary, substantial incapacity" under R.C. 2901.01(A)(5) means "total loss of

consciousness." No citation to any authority has been provided to support that bright-line conclusion. Because Tripplett failed to provide any analysis or discussion upon which it can be concluded that "temporary, substantial incapacity" means "total loss of consciousness," we should not resolve the question asked by the majority, and this panel should certainly avoid sua sponte creating a bright-line definition of temporary, substantial incapacity that requires the state to prove the "total loss of consciousness."

{¶ 62} Since the majority's analysis is beyond that which was provided by Tripplett, the question becomes whether any definition of "serious physical harm" is implicated by Tripplett's conduct in choking the victim to the point she believed he was going to "finish her off" with the bottle. R.C. 2901.01(A)(5)(b) provides an alternative definition of "serious physical harm": "[a]ny physical harm that carries a substantial risk of death." Choking a human being is meant to deprive that person of oxygen. The nature of the act itself carries a substantial risk of death depending on the force applied. *See, e.g., State v. Mukes*, 2d Dist. Montgomery No. 28350, 2020-Ohio-127, ¶ 25 (strangling a person can constitute serious physical harm under R.C. 2901.01(A)(5)(b)).

{¶ 63} There is no dispute from Tripplett that his choking the victim caused physical harm and that the force applied was sufficient to cause the victim to be "fading away" and cause her to believe that Tripplett intended to "finish her off" before she was able to break free. The act of choking another human can (but may not always) be considered serious physical harm depending on the particular facts

of each case. *See generally* R.C. 2903.18(B). Neither Tripplett nor the majority have discussed the implications of R.C. 2901.01(A)(5)(b), which is manifestly applicable to the underlying facts of this case. Given the failure to address the pertinent definition of "serious physical harm," I would overrule Tripplett's broadly asserted argument.

{¶ 64} But regardless, the record demonstrates that the trier of fact was asked to consider the loss of consciousness at trial as a basis to convict Tripplett. During its closing argument, the state relied on the loss of consciousness as a basis to support the convictions: "At one point he cut her with a bottle and also choked her to the point where she thought she was [going to] lose consciousness." Tr. 105:19-21; *see also* tr. 108:9-11. The state went on to clarify that "for these reasons the State believes it has proven its case beyond a reasonable doubt in each of the three counts of the indictment and ask this Court to find Mr. Tripplett guilty on all three counts." Tr. 108:15-20. If the state never intended to rely on the loss of consciousness as a basis to prove an element of the crime, then there was no need for the state to reference that conduct as a basis to support the convictions. Tripplett implicitly conceded this analysis in light of the argument he presented for review, solely relying on the choking incident as the basis of the serious physical harm element of felonious assault.

{¶ 65} In light of the limited and unsupported argument presented, I cannot conclude that Tripplett has met his burden to demonstrate prejudice under either the plain error review or his ineffective-assistance-of-counsel claim. The state has

never been presented the opportunity to rebut the majority's argument. Tripplett never presented it to the trial court. At best, the majority's conclusion as to the allied offense issue is one that implicates the ineffective-assistance-of-counsel claim, which mandates a reversal to the trial court for further proceedings, not an outright reversal of the convictions. But "[u]ltimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge." *State v. McKnight*, 2022-Ohio-591, 185 N.E.3d 1148, ¶ 34 (10th Dist.). Tripplett has not provided any reason to distinguish the line of authority analyzing the separate conduct or the separate harm considerations, and therefore, he has not demonstrated prejudice.

{¶ 66} I would overrule Tripplett's first two assignments of error with respect to the allied offense issue and address the remainder of his arguments as presented. I therefore dissent from the majority's decision.