[Cite as *State v. Osborne*, 2024-Ohio-2173.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 113294

    v.                           :

SCOTT OSBORNE,                          :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-680764-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Callahan and Kristen Hatcher, Assistant Prosecuting Attorneys, *for appellee.*

P. Andrew Baker, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Scott Osborne ("Osborne"), appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of strangulation and domestic violence. Finding no merit to the appeal, we affirm.

## I. Factual and Procedural Background

{¶ 2} In May 2023, a Cuyahoga County Grand Jury indicted Osborne as follows: Count 1, strangulation in violation of R.C. 2903.18(B)(2), a felony of the third degree; Count 2, strangulation in violation of R.C. 2903.18(B)(3), a fourth-degree felony; Count 3, domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor; and Count 4, obstructing official business in violation of R.C. 2921.31(A), a second-degree misdemeanor. Osborne pleaded not guilty, and the matter proceeded to a bench trial.

{¶ 3} At trial, the prosecutor played the 911 call Osborne's wife, R.O., made to the North Olmsted police department on the evening of April 20, 2023. In the call, R.O. told the dispatcher that she and Osborne had been out for dinner and had a few drinks but that Osborne hit her in the face three times on the way home. She said that when she was in the bathroom after they got home, Osborne put a towel around her neck and shook her head so violently that he pushed her into the bathroom door, causing a mark on her back. She asked the police to come to her home.

{¶ 4} Later that evening, R.O. completed a written statement for the North Olmsted police, stating:

> We were having dinner and a few drinks. I told him in the car he didn't have to curse at me in front of my friend and her father. We were in the driveway, he got in my face and flathanded hit me in the nose and mouth. I walked away (got out of the car), came in, used the restroom. He came in, also used the restroom, still hollering, washed & dried his hands and took the towel[,] put it on my neck and choked and shook me and pushed me into the bathroom door. When he was choking me with the towel, I got dizzy and saw stars. Did not lose consciousness.

{¶ 5} R.O. was the state's only witness at trial. Upon direct examination, she testified that she and Osborne went out for dinner and drinks with friends on April 20, 2023, and got into an argument on the way home. She said that they were still arguing as they sat in the car in the driveway and that she was "feeling agitated" and tried to grab Osborne's phone. She testified that when he reached to grab it himself, she spat in his face and then hit him, although she said she did not recall how she hit him.

{¶ 6} R.O. said that she then got out of the car and went to the bathroom. She testified that she "was a little out of it still at this point" and when Osborne came into the bathroom and said "something" to her, she "lost [her] head again and tried pushing him out of the way." She said that after she pushed Osborne, he turned around to "tell [her] to just knock it off and to calm down" and then hugged her "to tell [her] to calm down because [she] was not in a good state of mind."

{¶ 7} At that point in R.O.'s testimony, the prosecutor asked the judge to declare R.O. to be a hostile witness because of the state's surprise at her testimony and affirmative damage by her testimony to the state's trial position. The prosecutor indicated that the state had a prior written statement from R.O. that was inconsistent with her trial testimony and wanted to use that statement to impeach her. After looking at R.O.'s written statement, the court granted the state's motion.

{¶ 8} After the prosecutor played the 911 call, R.O. stated that she recognized her voice on the call but that hearing the call did not refresh her recollection of the call. She also said that even after listening to the call, she did not

recall the events of April 20, 2023. She said that sometime prior to the April 20 incident, she had been hospitalized and put on medication that affected her brain such that she "was not in [her] right mind by any means" on the evening of the incident. Upon questioning by the court, R.O. admitted that she had seen and spoken with Osborne approximately one month before trial, despite the court's restraining order, but insisted she had not talked to him about the case.

{¶ 9} R.O. testified that she went to a doctor on April 26, 2023, because she "was sore" and "wanted to make sure [her] throat was okay." R.O. read into the record the "History of Present Illness" as reflected on state's exhibit No. 3, R.O.'s medical record from her visit:

> Patient is here after last Thursday being strangled by her husband and then also having a towel wrapped around her. She was then released and fell into a door frame which caused the bruising and discomfort in the right shoulder. She did call the police and does have a restraining order. She has a friend with her here today and just feels a little raspy in the throat. She has been taking some Tylenol but has also been having increased anxiety and problems sleeping.

The medical record also states that the patient's "Chief Complaint" was "strangled by husband, wants to make sure throat is okay[.]"

{¶ 10} The prosecutor then reviewed R.O.'s testimony with her. She admitted that she called 911 on April 20, 2023, and that state's exhibit No. 2 was a recording of the phone call that she made. She agreed that she also provided a written statement to the police on April 20, 2023, and when shown state's exhibit No. 1, the written statement, agreed that it was her handwriting and "that's what I wrote." She also admitted, upon questioning by the court, that she "did not lie to the

police" when writing her statement. She also testified that she had a clear memory of the April 20, 2023 incident when she visited the doctor on April 26, 2023, that she provided a statement to her doctor at that visit about what had happened, and that she would not lie to her doctor. The prosecutor showed R.O. state's exhibit Nos. 13-15, pictures of her taken by the police at her home after they responded to the 911 call; R.O. denied that she observed any marks or bruises to her body in the pictures.

{¶ 11} Upon cross-examination, R.O. testified that Osborne did not strangle her when she was in the bathroom but only hugged her and tried to comfort her because she was "having a meltdown." R.O. testified that the medical records from her April 26, 2023 doctor visit do not reflect that there was any injury to her neck or her lungs, but acknowledged that they reflect bruising along her right scapula and on her back.

{¶ 12} After the state rested, the trial court granted Osborne's Crim.R. 29 motion for acquittal on Count 4, obstructing official business. Osborne did not present any witnesses or evidence in his defense. The court then admitted all of the state's exhibits, including state's exhibit No. 1, R.O.'s written statement to the police, over defense objection, and heard closing arguments.

{¶ 13} The court subsequently found Osborne guilty of strangulation as charged in Counts 1 and 2, and domestic violence as charged in Count 3. At sentencing, the court merged Counts 1 and 2 as allied offenses, with the state electing to proceed on Count 1. The court sentenced Osborne on Count 1 to 24 months of

community control, and on Count 3 to 180 days in jail, suspended. Osborne now appeals from that judgment.

## II. Law and Analysis

{¶ 14} In his first assignment of error, Osborne contends that the trial court abused its discretion in admitting R.O.'s written statement to the police as an exhibit. He contends that the statement was inadmissible hearsay and that no hearsay exception justified its admission.[1] The state, on the other hand, contends that the statement was properly admissible under either the excited utterance or recorded recollection exceptions to the hearsay rule. Evid.R. 803(2) and (5).

{¶ 15} We need not decide this issue, however, because we find that even if the written statement was improperly admitted, any such error was harmless. This case was tried to the bench. "When the trial court is the trier of fact, the judge is presumed capable of disregarding improper hearsay evidence, and unless it is demonstrated that the court relied on inadmissible hearsay, a conviction will not be reversed." *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61. We find nothing in the record to demonstrate that trial court relied on R.O.'s written statement in convicting Osborne because even without the written statement, R.O.'s 911 call to the police on April 20, 2023, her medical records dated April 26, 2023,

---

[1] Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 generally deems hearsay inadmissible unless the evidence falls under a specific exception to the hearsay prohibition. *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87.

and her trial testimony demonstrate that Osborne's convictions for strangulation and domestic violence were supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} When considering whether a conviction is supported by the manifest weight of the evidence, the question is whether the prosecution met its burden of persuasion. *Bowden* at *id*. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 388. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶ 18} In Count 1, Osborne was convicted of strangulation in violation of R.C. 2903.18(B)(2), which states that "[n]o person shall knowingly * * * create a substantial risk of serious physical harm to another by means of strangulation or suffocation." He was also found guilty of strangulation in violation of R.C. 2903.18(B)(3) (Count 2), which provides that "[n]o person shall knowingly * * * cause or create a substantial risk of physical harm to another by means of strangulation or suffocation." In Count 3, he was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family member."

{¶ 19} The court merged Counts 1 and 2 as allied offenses for sentencing and at the state's election, sentenced Osborne on Count 1, strangulation in violation of R.C. 2903.18(B)(2). When counts in an indictment are allied offenses, and there is sufficient evidence to support the count on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14.

{¶ 20} With respect to Count 1, a person acts "knowingly," when the person "is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22. A "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 21} "Serious physical harm" includes any mental illness or condition that would require hospitalization or prolonged psychiatric treatment; any physical harm that carries a substantial risk of death; any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; any physical harm that involves some temporary, serious disfigurement; and any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain. R.C. 2901.01(A)(5)(a)-(e).

{¶ 22} R.O. testified at trial that she called 911 on April 20, 2023, and that the 911 call played at trial was a recording of the call she made that night. She also testified that she remembered the strangling incident clearly when she went to the doctor six days later and that she did not lie to the doctor when she told him that her husband had strangled her and when she reported her physical and mental injuries from the incident.

{¶ 23} This testimony, in conjunction with R.O.'s 911 call and her medical records demonstrate there was sufficient evidence that Osborne knowingly created a substantial risk of serious physical harm to R.O. when he strangled her with a towel and violently shook her head. In her 911 call, R.O. reported that her husband put a towel around her neck and shook her head so violently that while he was strangling her, he pushed her into the bathroom door. In her doctor visit six days after the incident, she reported to the doctor that her husband strangled her with a towel,

leaving her with a raspy throat, bruising and discomfort in her right shoulder, increased anxiety, and trouble sleeping.

{¶ 24} Although it seems intuitive that any strangulation necessarily causes a substantial risk of death and thus a substantial risk of serious physical harm,[2] in *State v. Triplett*, 8th Dist. Cuyahoga No. 112306, 2023-Ohio-4644, where the defendant was charged with felonious assault and domestic violence, this court found that the state failed to present sufficient evidence of a substantial risk of death even though the victim testified that the defendant put her in a chokehold and told her to "go to sleep," and that she was "kind of fading away" but then got the strength to fight off the defendant. *Id*. at ¶ 17. The *Triplett* Court found that it was unnecessary to decide whether the defendant's act of choking the victim constituted a substantial risk of death because the defendant's act of bludgeoning the victim with a bottle constituted serious physical harm, but stated that if it *did* decide the issue, it would find that the defendant's choking the victim did not constitute a substantial

---

[2] "Strangulation is one of the most lethal forms of domestic violence: unconsciousness may occur within seconds and death within minutes." National Domestic Violence Hotline, *The Dangers of Strangulation*, https://www.thehotline.org/resources/the-dangers-of-strangulation (accessed Apr. 30, 2024). "During a strangulation assault, the pressure applied to the neck impedes oxygen by preventing blood flow to and from the brain. The trachea can also be restricted, making breathing difficult or impossible. The combination can quickly cause asphyxia and unconsciousness." DomesticShelters.org, *Strangulation Can Leave Long-Lasting Injuries*, https://www.domesticshelters.org/articles/health/strangulation-can-leave-long-lasting-injuries (accessed Apr. 30, 2024). Although "victims of strangulation may never lose consciousness and may regain it after losing it, that doesn't mean that damage has not been done. Even the temporary lack of oxygen can cause brain damage and other life-threatening injuries. * * * [W]ithout proper medical care, strangulation can lead to death days or even weeks after the attack." *Id*.

risk of death because there was no evidence in the record that the victim ever lost consciousness or that the force applied in the chokehold was one that carried a substantial risk of death. *Id.*

{¶ 25} Although we disagree that the loss of consciousness in a choking or strangling incident is always required to demonstrate a substantial risk of death, as in *Triplett*, we need not decide whether Osborne placed R.O. at a substantial risk of death when he strangled her because there is sufficient evidence in the record demonstrating that he created a substantial risk of serious physical harm to her when he placed a towel around her neck, strangled her, violently shook her head, and pushed her into the bathroom door.

{¶ 26} Serious physical harm under R.C. 2901.01(A)(5) includes any mental condition that requires prolonged treatment. R.O. testified at trial nearly six months after the incident that she was undergoing mental health treatment as a result of numerous traumatic incidents in her life, including strangulation by her husband. Accordingly, the evidence reflects that Osborne created a substantial risk of serious physical harm to R.O. when he strangled her.

{¶ 27} Serious physical harm also includes "any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). This court has "repeatedly held that when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused serious physical harm." *State v. Melendez*, 8th Dist. Cuyahoga

No. 97175, 2012-Ohio-2385, ¶ 14, citing *State v. Wyland*, 8th Dist. Cuyahoga No. 94463, 2011-Ohio-455, ¶ 32. *See also State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 41 ("a trial court does not err in finding serious physical harm where the evidence demonstrates that the victim sustained injuries necessitating medical treatment"), and *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-6540, ¶ 24 (serious physical injury under R.C. 2901.01(A)(5) can be inferred where the victim's injuries are serious enough to cause the victim to seek medical treatment).

{¶ 28} R.O. testified that she went to the doctor six days after the incident because she "was sore" and her voice was raspy. R.O.'s medical records reflect that she told the doctor that Osborne had strangled her with a towel and that as a result, her throat was raspy and she had increased anxiety and trouble sleeping. The medical records also reflect that the doctor found "bruising along the right scapula on the back" and prescribed Zoloft for R.O.'s anxiety. On this evidence, the trier of fact did not err in determining that Osborne created a substantial risk of serious physical harm to R.O. when he strangled her. Despite Osborne's argument otherwise, the fact that the doctor did not find any jugular vein distinction on R.O.'s neck and found that her lungs were normal does not in any way demonstrate that Osborne did not create a strong possibility of serious physical harm to R.O. when he strangled her. Accordingly, we find the evidence was sufficient to support Osborne's conviction for strangulation on Count 1.

{¶ 29} Although we are not required to analyze the sufficiency of the evidence regarding the finding of guilt on Count 2 because the offenses merged for sentencing, we note that the evidence is sufficient to also support this finding. In Count 2, Osborne was found guilty of violating R.C. 2903.18(B)(3), which provides that no person shall knowingly create or cause a substantial risk of "physical harm" to another by means of strangulation. "Physical harm" is defined as "any injury, illness, or other psychological impairment, regardless of its gravity or duration." As discussed above, R.O. required medical treatment after the strangling, and the doctor found injuries to both her mental health and body. The same evidence also supports Osborne's conviction for domestic violence, as charged in Count 3.

{¶ 30} Osborne's convictions are likewise not against the manifest weight of the evidence. Osborne's argument that R.O.'s 911 call and medical records are not credible because they were not made under oath is not persuasive because R.O. testified at trial that she did not lie to the police or her doctor about what happened. A conviction should be reversed only in the most exceptional case where the evidence weighs heavily against the conviction. This is not that exceptional case. There is no indication that the trier of fact lost its way and created a miscarriage of justice in convicting Osborne of strangulation and domestic violence on the evidence presented at trial.

{¶ 31} To summarize, our review of R.O.'s trial testimony, her 911 call, and her medical records demonstrates there was sufficient evidence to support Osborne's convictions and they were not against the manifest weight of the evidence,

even without considering the written statement to the police. Even if R.O.'s written statement was improperly admitted, there is no indication in the record that the trial judge relied upon the statement in convicting Osborne because other evidence supported his convictions. Accordingly, Osborne's convictions are affirmed, and the first, second, and third assignments of error are overruled.[3]

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
LISA B. FORBES, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

---

[3] In his first assignment of error, Osborne argues that R.O.'s written statement was improperly admitted as an exhibit. In his second assignment of error, he contends that the evidence was insufficient to support his conviction for strangulation on Count 1, and in his third assignment of error, he contends that his convictions were against the manifest weight of the evidence.

LISA B. FORBES, J., CONCURRING IN JUDGMENT ONLY (WITH SEPARATE OPINION):

{¶ 33} I concur in judgment only and write separately to address two points made by the majority.

{¶ 34} First, I disagree with the majority's assertion that "it seems intuitive that any strangulation necessarily causes a substantial risk of death and thus a substantial risk of serious physical harm." R.C. 2903.18(B)(3) expressly recognizes that not every act of strangulation or suffocation causes or creates a substantial risk of serious physical harm. R.C. 2903.18(B), which governs the offense of strangulation or suffocation, states that no person shall knowingly:

> (1) Cause *serious physical harm* to another by means of strangulation or suffocation;
>
> (2) Create a substantial risk of *serious physical harm* to another by means of strangulation or suffocation;
>
> (3) Cause or create a substantial risk of *physical harm* to another by means of strangulation or suffocation.

(Emphasis added.)

{¶ 35} Physical harm is defined separately from serious physical harm. Physical harm "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Serious physical harm, on the other hand, is defined in R.C. 2901.01(A)(5) as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 36} Second, I disagree with the majority's claim that *State v. Triplett*, 8th Dist. Cuyahoga No. 112306, 2023-Ohio-4644, stands for the proposition that "the loss of consciousness in a choking or strangling incident is always required to demonstrate a substantial risk of death." In *Triplett*, the court concluded that "[t]here is no evidence in the record, either testimonial or through medical records, that the victim lost consciousness, even for a short time *or* that the force applied in the chokehold was one that carried a substantial risk of death." (Emphasis added). *Id.* at ¶17

KEYWORDS:

113294

Strangulation; R.C. 2903.18(B)(2); sufficiency of the evidence; manifest weight of the evidence.

Defendant's conviction for strangulation in violation of R.C. 2903.18(B)(2) was supported by sufficient evidence and was not against the manifest weight of the evidence where, even without considering the victim's written statement to the police about the incident, the victim's 911 call, her medical records, and her trial testimony demonstrated that the defendant knowingly created a substantial risk of serious physical harm to victim by strangling her.